**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Greg Oester, et al.,<br><br>　　　　　　Plaintiffs,<br><br>vs.<br><br>Wright Medical Technology,<br>Incorporated,<br><br>　　　　　　Defendant. | No. CV-19-04763-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Wright Medical Technology Incorporated ("WM")'s Motion for Summary Judgment (Doc. 49) and Motion to Partially Exclude the Opinions of Mari Truman. (Doc. 51) Both Motions are fully briefed and ready for review. (Docs. 52, 53, 54, 55) Defendants seek summary judgment on Plaintiff Greg Oester's failure to warn and punitive damage claims. (Doc. 49 at 5–6) They also seek to exclude part of Plaintiffs' expert Mari Truman's opinion. (Doc. 51 at 4) The motion to partially exclude the expert testimony will be denied and the motion for summary judgment will be granted, as set forth below.[1]

**I.　INTRODUCTION**

This is a products liability case involving medical hip replacement systems manufactured by Defendant WM. On December 20, 2006, Plaintiff had a hip replacement

---

[1] Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. See Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

system implanted, specifically the Profemur Total Hip System, which included "a metal Conserve[2] acetabular cup, a cobalt chrome Conserve femoral head, a Profemur modular neck, and a Profemur femoral stem." (Doc. 1 at ¶¶9,48) The implants allegedly failed because the metal-on-metal design of the components allegedly resulted in excessive wear, corrosion, and debris. (Doc. 1 at ¶¶9,20) The implant had to be replaced with "hip revision surgery" after the hip failed and there were "elevated metal ions" and "metallosis"[3] found in the hip area. (Doc. 1 at ¶¶9,52)[4]

Plaintiff filed a complaint against Defendant WM on July 19, 2019, with five counts. (Doc. 1) The remaining claims left for the Court to resolve are: Count I, negligence, Count II, strict liability-design defect, Count IV, strict liability-failure to warn, and Count V, punitive damages. (Doc. 49 at 5) Plaintiff retained expert Mari Truman. In her expert report, she offers opinions regarding "alleged fretting, wear and corrosion of Plaintiff's CONSERVE® femoral head component." (Doc. 51 at 4)

Defendants ask the Court to exclude Ms. Truman's opinions regarding corrosion and metal wear because they are "speculative and not reliable." (Doc. 51 at 4) Defendants also ask the Court to grant summary judgment in their favor on Counts IV and V — strict liability failure to warn and punitive damages. (Doc. 49 at 5–6)

///

///

---

[2] The Conserve components have also been referred to by Defendants as the "CONSERVE®" components. When not quoting the pleadings or referencing a case name, the Court will refer to them by their registered trademark name, that is, CONSERVE®.

[3] Metallosis is a type of metal poisoning involving a build-up of metal debris in soft tissue. *See* Catarina A. Oliveira, *Metallosis: A diagnosis not only in patients with metal-on-metal prostheses*, 2 EUR. J. OF RADIOLOGY OPEN, 3, 3 (2015).

[4] This case involves the same subject-matter as an earlier multidistrict litigation action against Defendant, assigned to the Northern District of Georgia. *In re: Wright Med. Tech., Inc., Conserve Hip Implant Prod. Liab. Litig.*, 844 F. Supp. 2d 1371 (U.S. Jud. Pan. Mult. Lit. 2012). There was a bellwether trial, and the jury found in favor of the plaintiffs. *See In re Wright Med. Tech. Inc., Conserve Hip Implant Prod. Liab. Litig.*, 178 F. Supp. 3d 1321 (N.D. Ga. 2016), *aff'd in part sub nom. Christiansen v. Wright Med. Tech., Inc.*, 851 F.3d 1203 (11th Cir. 2017). The MDL was closed to new claims in 2017 and terminated in 2018. *Id.*

## II. LEGAL STANDARDS

### A. *Daubert* Motions

Federal Rule of Evidence ("FRE") 702 permits parties to file motions to strike to ensure relevance and reliability of expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152–53 (1999). Courts have a "gatekeeping" function when it comes to expert testimony. *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010), *as amended* (Apr. 27, 2010). "When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Id.* When the expert does not meet the threshold, the Court may prevent her from providing testimony. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) ("Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.").

"Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401. Reliability is determined separately. "The trial court must first assess whether the testimony is valid and whether the reasoning or methodology can properly be applied to the facts in issue." *Puente v. City of Phoenix*, No. CV-18-02778-PHX-JJT, 2021 WL 1186611, at *1 (D. Ariz. Mar. 30, 2021) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993)). "The focus ... must be solely on [the expert's] principles and methodology, not on the conclusions that they generate." *Id.* (citing *Daubert*, 509 U.S. at 594).

### B. Summary Judgment

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Material facts are those facts "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material

3

fact arises if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record, together with affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the movant can do so, the burden then shifts to the non-movant who "must do more than simply show that there is some metaphysical doubt as to the material facts," and, instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). When considering a motion for summary judgment, a court must view the factual record and draw all reasonable inferences in a light most favorably to the nonmoving party. *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002).

**III.     DISCUSSION**

The Court will address the *Daubert* motion first, then the motion for summary judgment.

**A. *Daubert* Analysis of Plaintiffs' Expert Mari Truman**

Truman is a "biomechanical and biomedical engineering expert." (Doc. 51 at 5) Truman created her expert report without seeing the components of the hip replacement system that Plaintiff had removed from his body, or pictures or x-rays of the device or hip. (Docs. 51 at 5, 7; 51-1 at 12) Because Truman failed to examine Plaintiff's specific hip replacement, Defendant seeks to exclude her opinions regarding corrosion and metal wear "because they are speculative and not reliable." (Doc. 51 at 4) It also seeks to exclude her opinions regarding the general design defect because they do not fit the facts of the case, due to her failure to examine the specific component. (Doc. 51 at 4–5) Finally, Defendant seeks to exclude the medical causation opinions because they are outside the scope of Truman's expertise. (Doc. 51 at 5)

      *i.     Reliability*

"An expert's testimony may [be] excluded where it is based on subjective beliefs

4

or unsupported speculation which is no more than unreliable *ipse dixit* guesswork." *Friend v. Time Mfg. Co.*, 422 F. Supp. 2d 1079, 1081 (D. Ariz. 2005) (citing *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (holding that trial court may properly exclude *ipse dixit* opinions where "there is simply too great an analytical gap between the data and the opinion proffered")). This determination is up to the district court's discretion. *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998), *as amended* (Nov. 12, 1998). "Unlike an ordinary witness… an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Sementilli*, 155 F.3d at 1134 (citing *Daubert*, 509 U.S. at 592). When an expert opinion is based on information such as medical records and the expert's knowledge, training, and education, it is sufficient under FRE 703. *Id.* ("Federal Rule of Evidence 703 allows an expert to base his or her opinions and inferences on facts and/or data 'perceived by or made known to the expert at or before the hearing.'") Experts are not required by the Federal Rules of Evidence to examine the subject of the case firsthand. In *Sementilli*, the defense's causation expert witness did not examine the plaintiff, was not present at the scene of the pertinent slip and fall accident, and was unaware of plaintiff's thought process prior to the accident, but the panel found his opinion was able to be considered at summary judgment, based on examination of the medical records and his personal knowledge, training, and experience. *Id.*

Here, Truman's opinion regarding the device's corrosion was based on medical records and deposition testimony from the revision surgeon. (Doc. 52 at 4) Plaintiffs argue these materials are sufficient to support her opinion regarding the corrosion. (Doc. 52 at 4–7) Defendant argues this methodology was insufficient because Truman offers opinions about the specific device's corrosion and wear yet did not examine the device to see whether it actually demonstrated such damage. (Docs. 51 at 6–8, 53 at 6) Defendant offers examples from other cases in which Truman's opinions on other medical devices were excluded because she relied too much on her training, background, and prior experience and not on the device itself. (Doc. 51 at 7–8, 53 at 6) Plaintiffs argue the reliance on the

observations of the surgeon's observations during the procedure was sufficient. (Doc. 52 at 8)

The cases involving Ms. Truman that Defendant offers as examples are either not factually aligned with the case here or are from outside the District of Arizona and Ninth Circuit. *In re: Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. and Versys Femoral Head Prod. Liab. Litig. v. Zimmer, Inc., et al.*, Nos. 18-MD-2859, 18-MC-2859, 19-CV-699 (PAC), 2021 WL 3475681 (S.D.N.Y. Aug. 6, 2021); *Hardison v Biomet, Inc.,* No. 5:19-cv-00069-TES, 2020 WL 4334108 (M.D. Ga. July 27, 2020); *Fitzsimmons v. Biomet Orthopedics, Inc.*, No. 2:19-cv-182-FTM-29NPM, 2020 WL 6784236, at *4 (M.D. Fla. Nov. 18, 2020). Defendant also offers Ninth Circuit case *Triton Energy Corp. v. Square D Co.* for the proposition that when a single expert is testifying in a products liability case, she must examine the product in question for her opinion to be reliable. Doc. 51 at 8 (citing 68 F.3d 1216, 1222 (9th Cir. 1995)). In *Triton*, the expert was evaluating the effectiveness of a particular circuit breaker that he never examined because it had been destroyed. *Id.* at 1219–20. Under Nevada law, the opinion was found to be unreliable because the expert could not base his opinion on specific facts, since he could not view the circuit breaker *Id.* A later Ninth Circuit case distinguished *Triton* because under California law (applicable in that case), a product design defect can be proven through circumstantial evidence, and there the plaintiff had alleged a design defect of all 1999 Ford Expeditions, and not just the one involved in the accident. *Michery v. Ford Motor Co.*, 650 F. App'x 338, 342 (9th Cir. 2016). Therefore, the panel held the expert did not need to look at the specific 1999 Ford Expedition. *Id.* Here, Plaintiff alleges all WM hip implant systems on the market at the time were defective, not just the one placed within his hip. (Doc. 1 at ¶4,9,36) Truman noted in her expert report that she has examined devices explanted from other patients with similar injuries. (Doc. 51-1 at 12) She also relied on the records from the treating surgeon. (Doc. 51-1 at 12) She has been an expert witness in many hip replacement design defect cases, including cases involving the CONSERVE® system at issue here. (Docs. 51 at 9; 51-1 at 13; 52 at 57) The Court now looks to see what

is necessary under Arizona law to prove the remaining claims in this case, which will determine whether it was necessary for Truman to look at this specific system.

In Arizona, "[a] negligence design defect claim begins with the assertion that a manufacturer produced a product that fails to meet 'the purpose for which it is designed.'" *Jones v. Medtronic Inc.*, 411 F. Supp. 3d 521, 531 (D. Ariz. 2019), aff'd sub nom. *Jones v. Medtronic*, 830 F. App'x 925 (9th Cir. 2020) (quoting *Stilwell v. Smith & Nephew, Inc.*, 482 F.3d 1187, 1194 (9th Cir. 2007)). "A negligent design case focuses on whether the defendant's conduct was reasonable in view of a *foreseeable risk at the time of design of the product*." *Jones v. Medtronic*, 411 F. Supp. 3d at 531 (citing *St. Clair v. Nellcor Puritan Bennett LLC*, 2011 WL 5331674, at 5 (D. Ariz. Nov. 7, 2011)) (emphasis added).

For strict liability design defect claims, Arizona courts use the consumer expectation test or a risk/benefit analysis. *Id.* Neither test requires consideration of the specific product at issue; one focuses on the expectations of the consumer, the other focuses on what the manufacturer knew at the time the product was placed on the market. *Id.* Furthermore, "[n]o expert testimony is necessary to establish a design defect under the consumer expectation test because the test focuses on the safety expectations of an ordinary consumer rather than those of an expert." *Long v. TRW Vehicle Safety Sys., Inc.*, 796 F. Supp. 2d 1005, 1010 (D. Ariz. 2011) (internal quotations omitted).

Here, the failure to warn claim is focused on the warning with the device and not the device itself. *See infra* III.B. The two relevant claims[5] require Plaintiffs to show Defendant had some sort of general knowledge about the product at issue. Defendant's concerns about the materials Truman relied upon in making her opinion go to the credibility of her testimony, but not its admissibility. *See Friend*, 422 F. Supp. 2d at 1081 ("The jury is entitled to hear expert testimony and decide whether to accept or reject it after considering whether predicate facts on which the expert relied were accurate.") (internal

---

[5] Summary judgment has been granted in favor of Defendant on the punitive damages claim, as will be discussed below. *See infra* III.B. Therefore, the Court will not discuss it in the *Daubert* context.

citation omitted). The Court will not find Truman's opinion unreliable solely based on the failure to examine the specific hip replacement component.

### ii. Relevancy and Fit

"The scientific knowledge must be connected to the question at issue." *Friend*, 422 F. Supp. 2d at 1081. The standard for fit is higher than the relevance standard, and "federal judges must exclude proffered scientific evidence under Rule 702 unless they are convinced that it speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311 (9th Cir. 1995) ("Daubert II").

Defendant alleges Truman's general design defect opinion that metal-on-metal hip implants are subject to excessive wear that causes injury like the one allegedly present in Plaintiff are unreasonably applied to the facts of this case because Truman failed to examine Plaintiff's specific implant. (Doc. 51 at 9) Defendant argues this creates a "gap" between the opinion and the underlying facts. (Doc. 51 at 9–10) Defendant's gap argument is based on a Middle District of Florida holding that excluded expert testimony for lack of fit because the expert (not Truman, though she involved in the case) did not view the metal-on-metal hip implant at issue and opined that the injury was due to "mixed-metal coupling," where the hip implant did not contain mixed metals. Doc. 53 at 7, citing *Fitzsimmons.*, 2020 WL 6784236 at *4. Obviously, that expert was making an analytical leap because the hip implant at issue was not of the same makeup as the others examined. *Id.* That opinion was based on facts that are not present in the instant case. Defendant makes no such arguments here. Defendant notes Truman's opinion was based on her experience with other "explanted CONSERVE® MoM bearings," which were the same kind Plaintiff had implanted, then explanted. (Docs. 1 at ¶9, 51 at 9) Therefore, although Truman did not examine Plaintiff's implant, her opinion was based in part on others just like it. Therefore, the Court finds Truman's testimony sufficiently fits the facts at hand.

### iii. Scope of Expertise

Defendant argues Truman's opinions on the cause of Plaintiff's injuries should be

excluded because she is not a medical doctor and should not be allowed to offer medical causation opinions. (Doc. 51 at 10) Plaintiffs argue the causation opinion is proper because Truman relied on the treating surgeon's report and deposition testimony in forming her opinion. (Doc. 52 at 6–10) An Eastern District of Missouri court and a Middle District of Georgia court have both excluded Truman's medical causation testimony because she is an engineer and not a medical doctor. *Bayes v. Biomet, Inc.*, No. 4:13-cv-00800-SRC, 2020 WL 5594059, at *6 (E.D. Mo. Sept. 18, 2020); *Hardison v Biomet, Inc.,* No. 5:19-cv-00069-TES, 2020 WL 4334108, at *12 (M.D. Ga. July 27, 2020). This district does not have a blanket prohibition on engineers opining on medical causation; rather, if the engineer has "extensive experience and expertise in engaging in primary research on the effects of the relevant mechanism at issue" she may testify as to medical causation. *Compare Allen v. Am. Cap. Ltd.*, 287 F. Supp. 3d 763, 805 (D. Ariz. 2017), *with Rascon v. Brookins*, No. CV-14-00749-PHX-JJT, 2018 WL 739696, at *2 (D. Ariz. Feb. 7, 2018) (finding a toxicologist unqualified to offer medical causation opinions on law enforcement restraints, TASER usage, or cardiorespiratory compromise).

      Having reviewed the parties' arguments and Truman's expert report and qualifications, the Court finds she is sufficiently qualified to opine on medical causation because of her extensive experience with metal-on-metal hip implants and their effects on recipients, the provided Georgia and Missouri cases notwithstanding.

### B.  Summary Judgment Analysis

      First, Plaintiffs have said they do not oppose dismissal of the punitive damages claim. (Doc. 54 at 14) Defendant agreed to dismissal. (Doc. 55 at 5) Therefore, the Court will dismiss the punitive damages claim.

      Turning to the failure to warn claim, Defendant states that it is grounded in negligence (Count I) and strict liability (Count IV) and that it fails as a matter of law. (Doc. 49 at 9) The Complaint states Count I as a general negligence claim and Count IV as "Strict Liability – Failure to Warn." (Doc. 1 at ¶¶81–84,95–100) Plaintiffs do not address the negligence arguments in their response to the motion for summary judgment, focusing

entirely on strict liability. (Doc. 54) To the extent Plaintiffs bring the negligence claim under a failure to warn theory, summary judgment will be granted in favor of Defendants due to the lack of response. "Failure to respond to the merits of one party's argument constitutes a concession of that argument." *Panaccione v. Aldonex Inc.*, No. CV-19-04483-PHX-DLR, 2021 WL 268781, at *3 (D. Ariz. Jan. 27, 2021) (citing *M.S. v. Cty of Ventura*, No. CV 16-03084-BRO (RAOx), 2017 WL 10434015, at *24 n. 20 (C.D. Cal. Mar. 7, 2017) and *Mendoza v. City of Peoria*, No. CV-13-00258-PHX-DJH, 2015 WL 13239816, at *4 (D. Ariz. July 31, 2015)).

To grant summary judgment in favor of a plaintiff on a strict liability failure to warn claim, the plaintiff must prove "that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution." *D'Agnese*, 952 F. Supp. 2d 880, 890 (D. Ariz. 2013) (citing *Powers*, 217 Ariz. at 404).

In strict liability failure to warn cases, Arizona law has a heeding presumption that allows "the fact-finder to presume that the person injured by product use would have heeded an adequate warning, if given." *Id.* (citing *Golonka v. General Motors Corp.*, 204 Ariz. 575, 586 (Ariz. Ct. App. 2003)). However, the presumption is rebuttable, meaning "if the manufacturer introduces evidence that would permit reasonable minds to conclude that the injured party would not have heeded an adequate warning" the presumption is destroyed "and the existence or non-existence of the presumed fact must be determined as if the presumption had never operated in the case." *Id.* at 890–91. Furthermore, in such cases, Arizona courts also follow the learned intermediary doctrine ("LID"). *Id.* at 891. The Arizona Supreme Court has held that in strict liability cases, "if the manufacturer provides complete, accurate, and appropriate warnings about the product to the learned intermediary, it fulfills its duty to warn the consumer." *Watts v. Medicis Pharm. Corp.*, 239 Ariz. 19, 24 (2016). Arizona has adopted the Third Restatement of Torts definition of the LID, as follows:

> A prescription drug or medical device is not reasonably safe

> due to inadequate instructions or warnings if reasonable instructions or warnings regarding foreseeable risks of harm are not provided to:
>
> (1) prescribing and other health-care providers who are in a position to reduce the risks of harm in accordance with the instructions or warnings; or
>
> (2) the patient when the manufacturer knows or has reason to know that health-care providers will not be in a position to reduce the risks of harm in accordance with the instructions or warnings.

*Id.* (citing RESTATEMENT (THIRD) OF TORTS: PROD. LIAB. § 6(d) (1998)). The LID does not apply, "if the manufacturer fails to provide adequate warnings to the learned intermediary." *Id.* The heeding presumption and the LID work together; rather than determining whether the injured party would have heeded the warning, courts look at whether the treating physician would have heeded it. *Paseka v. Ethicon Inc.*, No. CV-20-00100, 2020 WL 8175427, at *4 (D. Ariz. Nov. 9, 2020).

Defendant first argues it had no duty to warn Plaintiff directly. (Doc. 49 at 9–10) Plaintiffs do not contest that argument. Defendant next argues Dr. Firestone did not read the warnings provided, thus, the claim must fail. (Doc. 49 at 10–11) Plaintiff responds that although Dr. Firestone did not read the warning that came on the box of the implant, first, most doctors do not see medical device product boxes prior to surgery and second, he had "received informational brochures from Defendants and had multiple conversations with Defendant's sales representatives, engineers, marketing staff, and executives" and at no point was he told of the risk associated with the implant. (Doc. 54 at 12–13)

It is not a disputed fact that Dr. Firestone did not read the warning that came with the implant. (Doc. 50 at 3, 70) This Court has found that when it is undisputed that the treating medical provider did not read warnings that came with the medical device before using it on or implanting it in the plaintiff, the heeding presumption is rebutted, and the plaintiff will be unable to prove causation for a failure to warn claim. *Paseka*, 2020 WL 8175427 at *4. Furthermore, in *Paseka*, the treating physician had spoken to representatives from the defendant manufacturer and had reviewed warning materials at

some point, but not those for the specific product at issue. These facts are similar to the instant case, and the Court still found the failure to read the specific warnings rebutted the presumption. *Id.* at *5. The Court finds the same in the instant case.

Additionally, courts should not impose additional requirements on manufacturers than those already levied by the FDA. *See Eidson v. Medtronic, Inc.*, 981 F. Supp. 2d 868, 887 (N.D. Cal. 2013) (citing *Houston v. Medtronic, Inc.*, 957 F. Supp 2d 1166, 1176–78 (C.D. Cal. 2013)). A state law tort claim is not the proper vehicle to impose further obligations on FDA-compliant medical device manufacturers. *Id.*

Therefore, there is no way a reasonable jury could find that an inadequate warning or warnings were the proximate cause of Plaintiff's injuries, and grants summary judgment on the strict liability failure to warn claim.

## IV. CONCLUSION

As to the *Daubert* motion, the Court finds Mari Truman's expert testimony is admissible under the standards set forth in the Federal Rules of Evidence, *Daubert*, and its progeny. *See supra* III.A.

As to the motion for summary judgment, the parties agreed to dismiss the punitive damages claim. *See supra* III.B. The Court further found there to be no genuine dispute of material fact on the failure to warn claim, both for negligence and strict liability purposes. *Id.*

Therefore,

**IT IS ORDERED** that Defendant Wright Medical Technology, Incorporated's Motion to Partially Exclude the Opinions of Mari Truman (Doc. 51) is **denied**.

///
///
///
///
///
///

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Doc. 49) is **granted as follows**:

1. Count V – Punitive Damages is **dismissed with prejudice**.
2. Summary judgment is **granted** in favor of Defendant Wright Medical Technology on Count IV – Strict Liability – Failure to Warn.
3. Summary judgment is granted in part in favor of Defendant Wright Medical Technology on Count I – Negligence, only to the extent Plaintiffs intended to base the negligence claim on a failure to warn theory.

Dated this 24th day of August, 2021.

Honorable Steven P. Logan
United States District Judge